### Kirkland *et al.* v. Johnson *et al.*

Almand, Justice. W. P. Kirkland and others, as citizens, residents, and taxpayers of the City of Manchester, filed an equitable petition against that city, and certain named individuals constituting its acting Board of Commissioners, which in substance alleged: On March 9, 1953, the defendant commissioners adopted a resolution to sell certain described real estate owned by the city "and formerly used for school purposes." Pursuant to this resolution, the defendants were advertising the property for sale, in which advertisement sealed bids were asked to be received by a stated time, the city reserving the right to accept or reject any and all bids. Under the charter power of the City of Manchester, it has no corporate authority to sell, alien, or convey the prop-

erty acquired by it, and the resolution offering the property for sale is ultra vires and void. The prayers were that the defendants be restrained and enjoined from selling, conveying, or alienating this property. The general demurrer of the defendants was sustained, and by bill of exceptions the plaintiffs assign error on the order sustaining the general demurrer and dismissing the petition. *Held:*

1. As a general rule, property held by a municipality for governmental or public uses can not be sold without express legislative authority, but must be devoted to the use and purpose for which it was intended. The rule is otherwise as to property held by a municipality in its proprietary or private capacity, where not devoted to any specific public use. 10 McQuillin Municipal Corporations (3d ed.), § 28.37, and citations therein. Though land be bought for a public use, if not actually used for such purpose it can not be said to be held by the municipality affected by a public trust, and may be sold. Kings County Fire Insurance Co. *v.* Stevens, 101 N. Y. 411; City of Williamsburg *v.* Lyell, 132 Va. 455 (112 S. E. 666).

2. Though all property owned by a municipality is presumptively held for the public use (Code, § 69-305), the only allegation in the instant petition as to the property proposed to be sold by the municipality is that the defendants were preparing to sell certain real property owned by the city "and formerly used for school purposes." Applying the rule that, upon consideration of the petition as against a general demurrer, it must be construed most strongly against the plaintiffs, the petition in the instant case is construed as meaning that the property is no longer being used for governmental or public purposes, there being no specific allegation that it is not being held by the defendant municipality in its proprietary or private capacity.

3. The act of the General Assembly incorporating the City of Manchester (Ga. L. 1909, p. 1071), as amended, does not contain any general or specific authority for the city to sell, convey, or alienate any property owned by it. Section 1 expressly authorizes the city to contract and be contracted with, and to make and enact all ordinances, rules, and regulations for the transaction of its business and the welfare and proper government of the city as to the proper authorities may seem best, and said city "shall be able in law to purchase, hold, receive, enjoy, possess and retain in perpetuity or for any term of years, any estate or estates, real or personal, lands, tenements, and hereditaments, of what kind or nature soever, within the limits of said city, for corporate purposes." Powers of a municipal corporation are fixed by its charter and by general statutory authority relating to such corporations, and it may exercise such powers as are expressly delegated to it, as well as those which would be reasonably implied from the express terms of the charter. *Loftin* v. *Collins,* 117 *Ga.* 434 (2), 438 (43 S. E. 708, 61 L. R. A. 150). "The council or other governing body of a municipality has a discretion in the management and disposition of its property, and where it is exercised in good faith, equity will not interfere therewith." Code, § 69-203. The powers granted to municipal corporations are to be strictly construed, and if there is any reasonable doubt of the existence of the power, it will be resolved against the municipality. *Georgia*

*Railway & Power Co.* v. *Railroad Commission of Georgia,* 149 *Ga.* 1 (2) (98 S. E. 696, 5 A. L. R. 1). In the instant case, the City of Manchester, having express power to purchase, hold, receive, enjoy, possess, and retain real property of every kind and nature, in the absence of an express prohibition in its charter to sell or alien property owned by it, has implied authority to dispose of property held by it in its proprietary or private capacity. The power to acquire property carries with it implied power to dispose of it.

4. As a general rule, where property held by a municipality for governmental or public use is abandoned as to such use, the municipality may sell it without express legislative approval. Board of Revenue of Etowah County *v.* Hutchins, 250 Ala. 173 (8) (33 So. 2d, 737); Fussell-Graham-Alderson Co. *v.* Forrest City, 145 Ark. 375 (2) (224 S. W. 745); Carson *v.* State, 240 Iowa 1178 (5) (38 N. W. 2d, 168); City of New Orleans *v.* Dupuy Storage & Forwarding Corp., 215 La. 795 (1) (41 So. 2d, 721); Curry *v.* City of Highland Park, 242 Mich. 614 (219 N. W. 745); Carter *v.* City of Greenville, 175 S. C. 130 (5) (178 S. E. 508). See annotation 141 A. L. R. 1454, Municipality, Power to Sell, Effect of Abandonment. As was stated in Ogden City *v.* Bear Lake & River Water Works & Irrigation Co., 16 Utah 440 (52 Pac. 697, 41 L. R. A. 305), at pages 453, 454: "Public buildings may become unfit for the public use, and for sufficient reasons the city may not wish to build on the same lot; and such buildings, and the lots upon which they stand, may be no longer used by the public. The city from time to time may have other classes of property that has ceased to be used, or is not used by the public. All such property of a municipal corporation, not devoted to the public use, may be sold or leased under the general authority to sell or lease, as the public welfare may demand. Such property may be converted into money or other things, and in that form devoted to the use of the public. But property devoted to a public use cannot be sold or leased without special statutory authority." In the instant case, construing the petition as alleging that the property to be sold is not now being used for governmental purposes, the municipality was authorized to sell it as being held in its proprietary or private capacity. It not appearing that the property in question has been received by the municipality by dedication to a public use, the cases of *Brown* v. *City of East Point,* 148 *Ga.* 85 (95 S. E. 962), *City of Abbeville* v. *Jay,* 205 *Ga.* 743 (55 S. E. 2d, 129), and *Tillman* v. *Mayor &c. of Athens,* 206 *Ga.* 289 (56 S. E. 2d, 624), are not in point.

5. The municipality having a discretion in the management and disposition of its property (Code, § 69-203), in the absence of illegality, fraud, or clear abuse of discretion of the municipal authorities, equity will not interfere therewith, nor inquire into the propriety, economy, and general wisdom of the undertaking. *Chipstead* v. *Oliver,* 137 *Ga.* 483 (2) (73 S. E. 576). The allegations of the instant petition do not state facts that would authorize the intervention of equity, and it was not error to sustain the general demurrer and dismiss the petition.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., not participating.*

No. 18222. Submitted May 12, 1953—Decided June 10, 1953.

*George C. Kennedy,* for plaintiffs in error.
*Robert H. Jordan,* contra.