The Honorable Charlotte Schexnayder State Representative P.O. Box 220 Dumas, Arkansas 71639-0220
Dear Representative Schexnayder:
This is in response to your request for an opinion on whether the City of Dumas can give city owned property to the state or to a private entity. Additionally, you inquire as to the limitations on the lease of such property. Specifically, your questions refer to a warehouse which was donated to the City by Dollar General Stores, the approximate appraised value of which is three million dollars. You have enclosed correspondence from the Dumas City Attorney in this regard, which indicates that the City of Dumas has been unable to sell the property for some time, and its maintenance has become a financial burden on the City. The City wishes to convey the land to either the State of Arkansas for remodeling and use as a prison, or to a private entity for industrial purposes. The City hopes that either of these avenues would create employment opportunities for the citizens of the area.
It is my opinion that the answer to your question is "no," with regard to either a conveyance to the state or a conveyance to a private entity, if the conveyance is to be made without any consideration. The same holds true with regard to a lease of the property. Municipal corporations are not authorized by statute to make outright donations of property to the state or private entities. The City may sell or lease the property, however, to either the state or a private entity if adequate consideration exists. Such consideration, however, does not have to be in the form of money. The adequacy of the consideration is a fact question for a court to determine.
It should be noted from the outset that municipalities are creatures of the legislature and as such have only the powers bestowed upon them by statute or the constitution. Jones v.American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387
(1987). These sources of municipal power must therefore be examined to determine the authority to dispose of city-owned property. In this regard A.C.A. § 14-54-302 (1987) provides as follows:
 (a) Municipal corporations are empowered and authorized to buy, sell, convey, lease, rent, or let any real estate or personal property owned or controlled by the municipal corporation. This power and authorization shall extend and apply to all such real estate and personal property, including that which is held by the municipal corporation for public or governmental uses and purposes.
This statute, in subsection (b), authorizes municipal corporations to donate property to the federal government under certain circumstances. It does not, however authorize municipal corporations to donate property to the state or private entities.
Section 14-54-104(2) (1987) is also relevant to the analysis. This statute provides in pertinent part that:
 . . . where lands have been acquired or donated to the city for any object or purpose which has become impossible or impracticable to achieve, the lands may be used or devoted for other proper public or corporate purposes or sold by order of the city council and the proceeds applied for public or corporate purposes.
In my opinion, although the statute above would authorize the city to "devote" or "use" the property for other public purposes, this statute does not authorize an actual conveyance or lease of the property to other public entities without consideration. The language quoted above states that the property may be "devoted" or "used" for public purposes, or may be sold and the proceeds applied to public purposes. The words "devoted" or "used," in my opinion, were not intended to encompass a sale or other conveyance of the property, especially when viewed in light of the remainder of the sentence, which, in the alternative, authorizes a "sale" of the property. Additionally, in my opinion, the language above authorizing use of the property for "proper public or corporate uses" does not intend to refer to purposes other than city purposes. The use of both the words "public" and "corporate" was, in my opinion, intended to refer to the two different ways in which municipal corporations traditionally held property — 1) in their public capacity and 2) in their private, proprietary, or "corporate" capacity. See, e.g., Fussell v.Forrest City, 145 Ark. 375, 224 S.W. 745 (1920). In my opinion, therefore, the language above does not authorize an outright donation of the property to the state or private entities.[1]
It is therefore my opinion that municipal corporations are not authorized by statute to "donate" land to the State of Arkansas or private entities. See Op. Att'y Gen. 92-272 (City of Harrisburg cannot "donate" real property to private day care provider).
It should be noted, however, that the City of Dumas clearly has authority to sell or lease the property to the State of Arkansas or to a private party if the transaction is supported by adequate consideration. The two statutes set out above expressly grant this authority. It has been held that the sale of city or county property may be based upon consideration other than money. InCity of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962
(1953), the Arkansas Supreme Court upheld a bond issue used to finance the purchase of land which was immediately thereafter conveyed to the federal government without money consideration. The court held that "public advantage" constituted consideration. The court held that there was not a true "donation" of the land, because 1) there were many benefits which the city would receive in terms of increases in business and population, and 2) the city included a reverter clause in the deed which required that the land be returned to the city (greatly improved) if it ceased to be used for the purposes of the grant.
The court based its decision in part upon Little Rock Chamberof Commerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914) in which the court held that the county could convey a tract of land to the Chamber of Commerce (a private entity) for one dollar "and benefits to accrue to said county from the expenditure by said Chamber of Commerce of the [private] fund raised for industrial and development purposes. . . ." 113 Ark. at 441. The court noted that the county clearly had the authority to "sell" county property, and the only question was whether the consideration was so inadequate as to constitute fraud. The court noted that:
 There is no limitation placed upon the county court, by statute or otherwise, in the exercise of its judgment as to the consideration upon which the disposition of the county's property must be based; therefore, nothing short of fraud, or such gross inadequacy as will be the equivalent to fraud, is sufficient to invalidate the order of the county court directing the conveyance. The consideration may be in other than money, and the county court, in exercising its power, may determine what is to the best interests of the county. . . . Mere inadequacy of consideration is not sufficient to establish fraud.
113 Ark. at 443, 444. See also Op. Att'y Gen. No. 92-022
(county can convey nursing home property to private nonprofit corporation for adequate non-money consideration); and cf.generally Op. Att'y Gen. No. 93-057 (school district could not sell school property to political subdivisions for nominal consideration because no other non-money consideration would support the sale).
The court also noted that this conveyance of property did not violate Arkansas Constitution, art. 12, § 5 which provides as follows:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
The court noted that "[t]he disposition of real estate owned by the county is not an appropriation of money within the meaning of the Constitution, nor, . . . is the taxing power involved in any way in the transaction." The court in City of Blytheville v.Parks, supra, also noted that no violation of art. 12, § 5 existed, because the "city [was] not making itself a partner with nor lending its credit to the United States Government."221 Ark. at 741.[2]
It is therefore my opinion that the City of Dumas, although it is not authorized to make a conveyance of the property to either the state or a private entity with absolutely no consideration, may sell the property in question for adequate consideration to either of these entities. The consideration is not required to be in the form of money, and "public advantage" has been held to be an acceptable form of consideration. The question of whether the consideration is adequate, however, whether in the form of money or not, would be a fact question for a court to determine.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana Cunningham Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Neither, in my opinion do A.C.A. §§ 14-164-205, 14-164-307, or 14-164-506, relating to industrial development bonds, stand as specific authority for cities to make outright donations of land to the state or private entities under the facts outlined in your request. Neither, in my opinion, does A.C.A. § 14-54-107 (1987) (which authorizes cities to "purchase sites for new factories and industries and to give other favorable grants and privileges for the purpose of establishing . . . industries") stand as specific authority in this regard.
[2] It should also be noted that art. 12, § 5 does not in all likelihood prohibit donations by cities or counties to other public entities, such as the state or federal government, as the proscriptions of this section have been held to bar only actions benefitting private entities. See generally City of Paris v.Street Imp. District No. 2, 206 Ark. 926, 175 S.W.2d 199 (1943) and Bank of Commerce v. Huddleston, 172 Ark. 999, 291 S.W. 422
(1927).